h SANDERS, J,
dissents.
I respectfully dissent from the majority opinion. Under the facts of this case, I find it reasonable for Ms. Broussard to believe that her continued deposits from Citgo were payments in lieu of compensation. As a result, I would find that the prescriptive period provided by La.R.S. 23:1209 was interrupted because Ms. Broussard was lulled into a false sense of security regarding her workers’ compensation benefits. As stated by the majority, La.R.S. 23:209 provides the prescriptive periods applicable for an employee’s claims for workers’ compensation benefits. Employees have one year from the time of an accident to file a workers’ compensation claim. La.R.S. 23:1209(A). When the claim for workers’ compensation has prescribed on its face, the claimant bears the burden of showing that the prescriptive period was interrupted by estoppel. The time period established by La.R.S. 23:1209(A) is prescriptive rather than preemptive and may be interrupted. Lester v. Rebel Crane & Servs. Co., 393 So.2d 674 (La.1981).
The purpose of the one year prescriptive period is to protect employers from the burdensome litigation of stale claims. When, however, the employer lulls the employee into a false sense of security, causing him to withhold suit until after the period has expired, the employer cannot invoke the time bar to defeat compensation.
Dupaquier v. City of New Orleans, 257 So.2d 385, 387-88 (La.1972). To establish that the claimant was lulled into such a false sense of security, they must show that the |gemployer induced him to withhold suit until after the claim has prescribed through its words, actions, or inac-tions. Desselle v. Dresser Indus. Valve, 96-374 (La.App. 3 Cir. 2/5/97); 689 So.2d 549. It is not necessary however, for the claimant to show that the employer intended to mislead them as to the nature of the benefits being paid or the time frame for prescription. Millican v. General Motors Corp., 34,207 (La.App. 2 Cir. 2000); 771 So.2d 234, writ denied, 01-001 (La.3/23/01); 788 So.2d 426.
The Louisiana Supreme Court has held that, under La.R.S. 23:1209, payment of unearned wages by an employer is considered compensation, and such payment serves to interrupt prescription. Dupaquier, 257 So.2d at 387. “The payment of wages in lieu of compensation interrupts prescription for workers’ compensation claims, because such payments lull workers into not filing their claims within the prescriptive period.” Krieg v. Krieg Bros. Terrazzo Co., Inc., 93-1065, p. 3 (La.App. 3 Cir. 9/28/94); 645 So.2d 661, 664, writ denied, 96-152 (La. 3/30/95); 651 So.2d 837. Prescription does not begin to run anew until the last payment. Dupaquier, 257 S0.2d at 387. “Wages in lieu of compensation are defined as unearned wages paid to an employee after an injury.” Krieg, 645 So.2d at 664.
It is clear that Ms. Broussard continued to receive regular payroll deposits after she ceased reporting to work following the April incident. These payroll direct deposits appear to have occurred on regularly scheduled payroll dates corresponding to when Ms. Broussard would have been paid, had she not sustained an alleged work related injury and continued working as usual. Initially, these payments were for her full salary amount. At some point, *1287 the amount of these regular deposits decreased, and they eventually stopped in October of 2000. Ms. Broussard received one final direct deposit amount following her termination by Citgo in January of 2001. In the termination letter from Cit-go, written by Mr. Baumgarten, Citgo’s Labor Relations | ..¡Manager, Ms. Broussard was told that her last paycheck would be direct deposited to her account on January 5, 2001. Citgo contends that it was unaware that Ms. Broussard’s absence from work was the result of an alleged workplace injury and, therefore, the payments were merely sick pay as mandated by the applicable collective bargaining agreement. Citgo argues that, according to Keller v. Marathon Oil Co., 613 So.2d 795 (La.App.5 Cir.1993), an employer’s payment of sick leave benefits is not enough to mislead his employee into a false sense of security sufficient to suspend prescription. What Citgo fails to identify however, is that the employee in Keller specifically chose to receive sick leave benefits rather than workers’ compensation benefits, because his sick leave benefits were greater. The court held that in specific circumstances, because of the employee’s affirmative choice of sick leave over workers’ compensation benefits, the employee could not claim to have been mislead.
Citgo also claims that receipt of disability benefits instead of workers compensation benefits is not sufficient to lull an employee into a false sense of security so as to suspend prescription. In support for this argument Citgo cites Siemssen v. Manpower Temporary Services, 95-CA-80 (La.App.5 Cir.5/30/95); 656 So.2d 1115, and Brown v. Caddo Career Center, 28,111 (La.App.2 Cir.2/28/96); 669 So.2d 712, writ denied, 96-1042 (La.5/31/96); 674 So.2d 262. As with Keller, however, these cases can be distinguished from the present case. In both cases, the facts indicated that the employees were fully aware they were receiving disability benefits instead of workers compensation benefits, and therefore, the employee was never mislead.
The test for whether an employee has been lulled into a false sense of security consists of both subjective and objective considerations. There must be a third party Lpayor making payments under circumstances where a reasonable person could believe the payments were wages in lieu of workers’ compensation benefits. I agree with Ms. Broussard’s argument that, with respect to the subjective portion of the test, the question is not what form of compensation Citgo believed the payroll deposits to be, but rather, what type of compensation Ms. Broussard believed the payroll deposits to be. The primary purpose behind the interruption of prescription where the employee is lulled into a false sense of security is to correct for an employee’s mistaken belief that they are receiving workers’ compensation benefits. In light of such a belief on the part of the employee, they would have no reason to file for workers’ compensation benefits, and cannot be expected to realize that their statutory time for claiming such benefits is running out. The key to the analysis of this issue is that the employee in question believes that he has no reason to file for workers’ compensation benefits. Unlike the majority, I find Ms. Brous-sard’s belief that she was receiving wages in lieu of workers’ compensation to be reasonable under the circumstances of this case.
The majority finds Ms. Broussard’s agreement that she knew she was being paid according to the collective bargaining agreement to be significant, as well as the fact that she had previously received sick leave benefits under this agreement. Ms. Broussard insists that she was unaware that her continued payroll deposits were not wages in lieu of compensation as pro *1288 vided by the Citgo Employee Agreement. It is entirely credible, in light of the Agreement’s indication that workers’ compensation benefits were identical in amount and payment schedule to sick leave benefits, that she would believe her payments to be wages in lieu of compensation. Moreover, her testimony on this point is uncontested. In light of such a belief, she would have no reason to file a workers’ compensation claim during the time period she was receiving those payments.
|sFor the reasons outlined above, I find Ms. Broussard has met her burden of showing that she believed she was receiving unearned wages from Citgo. In my opinion, the evidence was sufficient to show that these payments by Citgo effectively lulled Ms. Broussard into a false sense of security regarding her recovery of workers’ compensation benefits. Therefore, I would find that the prescriptive period was interrupted and did not begin to run anew until after the final payment by Citgo.